**STATE of South Dakota, Plaintiff and Appellee,**

**v.**

**Ronald R. ELL, Defendant and Appellant.**

**No. 13726.**

Supreme Court of South Dakota.

Submitted on Briefs Sept. 9, 1982.

Decided Oct. 5, 1983.

Richard Dale, Asst. Atty. Gen., Mark V. Meierhenry, Atty. Gen., on brief, Pierre, S.D., for plaintiff and appellee.

Ronald R. Ell, pro se.

DUNN, Justice (On Reassignment).

This is an appeal from an order denying appellant Ronald R. Ell's claim to $559.00 in small bills seized from a dresser in his apartment by Sioux Falls police in 1974 pursuant to a valid search warrant. We reverse and remand.

On April 19, 1974, two men robbed Getten's Food Store in Sioux Falls, South Dakota. The robbers forced the assistant manager to give them approximately $900.00 in small bills. The robbers then fled in a red Ford automobile.

On April 23, 1974, police noticed a red Ford fitting the description of the Getten's robbery vehicle parked in front of appellant's apartment. The automobile had license plates registered to appellant. Police, pursuant to a search warrant, searched appellant's apartment and seized $559.00 in small bills from appellant's dresser. On April 29, 1974, appellant was charged with first degree robbery in the Getten's holdup. Appellant received court-appointed counsel after advising the court that he had $15.00, was in jail and had no other money anywhere.

While free on bail, appellant took part in an armed robbery in Omaha, Nebraska. A Nebraska court sentenced appellant to life in prison for murder in connection with the robbery. Based upon this sentence, the Minnehaha County states attorney moved to dismiss charges against appellant in the Getten robbery. The motion was granted by the circuit court.

In 1981, the manager of Getten's petitioned the circuit court for the $559.00 seized during the search of appellant's apartment. Despite appellant's claim that he was the sole owner of the money, the circuit court awarded exclusive title to the $559.00 to the manager of Getten's Food Store.

At issue in this appeal is whether money legally seized by police from the apartment of an individual subsequently charged with first degree robbery should be returned to him following the dismissal of the robbery charge against him.

The circuit court in this case acted pursuant to SDCL 23A–37, which provides for the return of seized property held by a court. We have held that SDCL 23A–37 gives the circuit courts authority to determine the rightful owner of seized property and to return the property to that person. *State v. Cody,* 322 N.W.2d 11 (S.D.1982). The general rule of the federal courts is in accord with *Cody:* "Seized property, other than contraband, should be returned to the rightful owner once criminal proceedings have terminated." *Sovereign News Co. v. United States,* 690 F.2d 569 (Sixth Cir. 1982); *United States v. Wright,* 610 F.2d 930 (D.C.Cir.1979); *United States v. LaFatch,* 565 F.2d 81 (Sixth Cir.1977). *See* Fed.R.Crim.P. 41(e).

■ Unfortunately, the determination of the rightful owner of the property in question becomes more difficult when there are third party claimants, such as the manager of Getten's. Previous federal and state decisions do, however, give us guidelines to follow in determining the rightful owner. First, the seizure of property from someone is *prima facie* evidence of that person's entitlement, particularly when the property is money. Unless there are serious reasons to doubt a person's rights to property seized from him, he need not come forward with additional evidence of ownership. *United States v. Wright, supra,* at 939. Second, in cases of allegedly stolen property, the burden is on the state to show some nexus between the property and the criminal ac-

tivity. Such a nexus is present where the property is shown to be a fruit of the crime. If there is no such evidence, the property must be returned to defendant. *State v. Sweatt,* 427 A.2d 940 (Me.1981).

■ In the present case, appellant was never convicted of robbing Getten's, and the state has not shown a nexus between the seized property and the criminal activity. There is simply no evidence in the record to show that the $559.00 seized by the police was the fruit of the Getten's robbery.

The fact that appellant stated at his arraignment that he had no money other than $15.00 at the jail is not necessarily inconsistent with his claim to the seized money. Appellant merely attested at arraignment that he lacked the money to retain counsel at the time he requested the court to appoint counsel. *United States v. Wright, supra,* at 941. The $559.00 was in the custody of the court and could not be used by appellant. Therefore, under the two-part guideline stated above, the $559.00 would be the property of appellant.

Under SDCL 23A–40–11, a lien is created upon all of the property, both real and personal, of any person for whom legal counsel or a public defender has been provided. Upon satisfaction of this lien, the balance of the $559.00, if any, should be awarded to appellant.

The order of the circuit court is reversed and the case remanded for an amended order in accordance with this decision.

MORGAN, J., concurs.

FOSHEIM, C.J., concurs specially.

WOLLMAN and HENDERSON, JJ., dissent.

FOSHEIM, Chief Justice (concurring specially).

Although circumstances appear to incriminate Ell, the State failed to persevere in his prosecution. He is still presumed innocent. SDCL 23A–22–3. In light of this presumption and absent proof that the money found belonged to the food store, we cannot conclude claimant is the owner. A recent dissent of Justice Henderson expressed the importance of this principle with strong language. *See State. v. Holmes,* 338 N.W.2d 104, 105 (S.D.1983) (Henderson, J., dissenting).

I join the majority to reverse.

HENDERSON, Justice (dissenting).

Proceedings were instituted by appellant under the provisions of SDCL ch. 23A–37 for the return of $559.00 in currency seized from his rented room under a lawful search warrant. These proceedings are all ancillary to the case in chief, a first-degree robbery charge, which was ultimately dismissed. A Sioux Falls grocery store filed written claim to the seized currency, whereupon appellant filed an "Answer and Motion to Deliver Defendant's Property." The trial court awarded exclusive title to the currency unto the grocery store proprietor and ordered the Clerk of Minnehaha County to deliver it to him.

A procedural history is in order. The armed robbery took place on April 19, 1974; a search warrant to search two rooms of an apartment house issued on April 26, 1974, one of said rooms rented to appellant under an alias; the search warrant was executed on the same day, April 26, 1974; a return of the search warrant was sworn to before the then Municipal Judge, Honorable R. Patterson; an inventory of property seized pursuant to the search was filed with the Municipal Court on April 29, 1974; on May 2, 1974, appellant made sworn application for a court-appointed attorney reflecting that he was an unemployed construction worker and had no wages, accounts receivable, money on person, money in banks, bonds, stocks, pensions, furniture, radios, jewelry, real property, but did have a one-half interest in a 1962 Ford of $50.00; in said application he swore that his annual income was $5,000.00 for the past two years; on May 2, 1974, the Municipal Judge appointed appellant defense counsel; on May 4, 1974, appellant was released from jail upon posting a $3,500.00 corporate surety bond; a preliminary hearing, after three sessions, was ulti-

mately concluded on May 20, 1974, and appellant was bound over for trial on first-degree robbery charges. Appellant remained free on bond. While on bond, he was convicted in the State of Nebraska of first-degree murder and three counts of shooting with intent to kill, wound, or maim. The Nebraska convictions stem from appellant's participation in a February 21, 1975, armed robbery of a Hinky Dinky store in Omaha, Nebraska. *See State v. Ell,* 196 Neb. 800, 246 N.W.2d 594 (1976). Appellant is now imprisoned in the Nebraska State Penitentiary at Lincoln and appears pro se in this appeal. Based upon appellant's life sentence to prison in Nebraska and a sentence of 16⅔ years to 50 years on three counts of shooting with intent to kill, wound, or maim, the state's attorney moved to dismiss the robbery charge in South Dakota. The trial court granted the motion on October 26, 1977. The grocery store proprietor waited for four years and two months after the first-degree robbery charge was dismissed to assert ownership of currency. On February 1, 1982, the trial court awarded title of the currency to the store owner.

At issue, is the trial court's determination of the rightful owner of the money under the facts of this case and the procedure set forth in SDCL ch. 23A–37. This is our second expression on this type of proceeding. Our first holding is found in *State v. Cody,* 322 N.W.2d 11 (S.D.1982), and we look to that case for guidance and precedent. All pertinent South Dakota statutes governing the disposition of seized property in a criminal prosecution are specifically set forth in *Cody.* Suffice it to say, we held in *Cody* that our trial courts have the authority to determine the rightful owner of seized property and to return the property to that person. The general rule of the federal courts is in accord with *Cody:* "[S]eized property, other than contraband, should be returned to the rightful owner after the criminal proceedings have terminated." *Sovereign News Co. v. United States,* 690 F.2d 569, 577 (6th Cir.1982); *United States v. Wright,* 610 F.2d 930 (D.C.Cir.1979); *United States v. LaFatch,* 565 F.2d 81 (6th Cir.1977). *See* Fed.R.Crim.P., Rule 41(e) 18 U.S.C.A.

We deem it necessary to review the facts to determine whether or not the trial court was clearly erroneous in its determination that the grocery store proprietor was the rightful owner of the currency. At or about 9:45 p.m. on April 19, 1974, two men, one of whom was armed, robbed Getten's Food Store. The store had just been closed and the cash register drawers were placed in a safe. The assistant manager was forced by the robbers to empty the store's safe of all cash it contained into three paper grocery sacks. Approximately $900.00 was taken in ones, fives, tens, and twenties. At the preliminary hearing, the assistant manager was able to identify the denominations of the stolen cash. The two robbers made their escape in a red Ford automobile, shooting at their pursuers as they fled. On April 20, 1974, at 3:00 a.m., a Sioux Falls policeman was investigating an armed robbery that occurred earlier that night. He noted a 1962 Ford parked on Duluth Avenue in Sioux Falls. This car was painted in a two-tone style with white over blue or turquoise, bearing South Dakota license plates B1–1847. This car was registered to appellant and his wife. Looking into this car from the outside, the alert officer saw two grocery bags in the back seat and a spent .45 calibre cartridge on the front seat. In an unrelated incident, on April 21, 1974, another Sioux Falls officer had occasion to stop the same automobile and noted that appellant was an occupant therein. A witness who pursued the escape car described it as being maroon or red. Sioux Falls Detective Flowers noticed an automobile fitting the description of the getaway vehicle parked in front of appellant's apartment house on April 23, 1974. There were no license plates. On the same day, detective Flowers returned once again and noted that the automobile now had South Dakota license plates but the plates matched the other 1962 Ford plates, namely B1–1847. The manager of the apartment building identified appellant as an occupant of one of the rooms and testified at the prelimi-

nary hearing that he saw appellant drive a red Ford of the same year as the blue Ford.

A search warrant was secured and its propriety is not in question. Investigating officers learned that appellant's room was rented to an individual who gave his name as Jerry Ellis. However, this individual was identified as appellant. The inventory from appellant's room revealed the remaining grocery store sack and it was described as a "brown paper sack bearing RG 27N, No. 86 sack double strength." The return of search warrant reveals .38 calibre and .45 calibre ammunition, which was similar to the .38 calibre slug removed from a wall of an apartment near the shoot-out and the .45 calibre ammunition found on the street at the getaway scene. The return also reveals one pair of dark sunglasses. The assistant manager twice testified that one of the robbers was wearing sunglasses. Also depicted on the return was "one extension to convert a hand held .45 calibre weapon to a shoulder weapon," an apparatus to gain more deadly accuracy commonly used by thugs and seasoned criminals. The inventory disclosed 101 one dollar bills in the top dresser drawer; 233 one dollar bills in the center dresser drawer; and 11 ten dollar bills, 14 five dollar bills, and 45 one dollar bills in the bottom dresser drawer.

Although a conviction of first-degree robbery was not obtained against appellant, the evidence strongly points towards his felonious participation in the armed robbery of Getten's Food Store and that the cash seized from his room was the fruit of the robbery. This Court should not sanction the delivery of the fruits of a crime to a hardened criminal, to the deprivation of an innocent victim.* One who steals or converts property to his own use does not thereby acquire title. *Stewart v. People,* 193 Colo. 399, 566 P.2d 1069 (1977). Therefore, the majority opinion's lien analysis under SDCL 23A–40–11, is incorrect because appellant owns no currency upon which a lien could attach.

Quite recently in *United States Fire Ins. Co. v. Dace,* 305 N.W.2d 50 (S.D.1981), a civil action, this Court held that proof of arson may be established by circumstantial evidence. Here, circumstantial evidence and direct evidence strongly link appellant to the armed robbery. Circumstantial evidence is equal to direct evidence and a crime in South Dakota may be proven by circumstantial evidence. *State v. Herrald,* 269 N.W.2d 776 (S.D.1978); *State v. Shank,* 88 S.D. 645, 226 N.W.2d 384 (1975). It is incredible that an unemployed construction worker would loosely keep currency in three dresser drawers and maintain that he is the rightful owner thereof when sunglasses and a nearby third grocery sack circumstantially tie him to the crime in question, not to mention ammunition similar to that used in the robbery and the potent evidence that he was the registered owner of the getaway vehicle. We cannot hold the trial court was clearly erroneous in its findings as specifically set forth in an order entered the 29th day of January, 1982, finding that the proprietor of the robbed grocery store was awarded exclusive title to the currency and denying appellant's claim of title. *In re Nelson,* 330 N.W.2d 151 (S.D.1983); *In re Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970).

*Wright,* 610 F.2d at 935, has established the general rule in the United States that seized property, other than contraband, should be returned to its rightful owners once criminal proceedings have been terminated. Appellant places great support to his claim for the currency based upon that leading case. However, the *Wright* Court stated:

> The seizure of property *from someone* is *prima facie* evidence of that person's entitlement, particularly when the seized property is money—negotiable instruments difficult to identify and trace.... Unless there are serious reasons (presented by the government or adverse claimants) to doubt a person's right to the

---

* The plight of victims of crimes has become of nationwide and statewide importance. So much, in fact, that our state legislature passed

SDCL ch. 23A–28, for restitution to victims of crime, and SDCL ch. 23A–28A, for restitution of profits from crime.

property seized from him, he need not come forward with additional evidence of ownership. (emphasis in original) (footnotes omitted)

*Wright,* 610 F.2d at 939. The *Wright* Court distinguished between money seized from a person's body and money seized from a room used by a person; the right to possession of the latter is "less certain." *Wright,* 610 F.2d at 940. Reviewing this record, there are serious reasons to doubt appellant's right to the currency and which we have factually substantiated above. Appellant has relied on a prima facie showing of entitlement but this presumption was strongly overcome by the facts of this case and the grocery store proprietor's claim of ownership to the seized funds.

I am authorized to state that Justice WOLLMAN joins in this dissent.